**Evender Gene JACKSON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 06–15–00151–CR**

Court of Appeals of Texas, Texarkana.

Date Submitted: December 28, 2015

Date Decided: March 4, 2016

650

Jessica Edwards, Attorney at Law, Greenville, TX, for appellant

G. Calvin Grogan, Assistant District Attorney, Noble D Walker, Jr., Hunt County District Attorney, Greenville, TX, for appellee

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

A jury convicted Evender Gene Jackson of aggravated robbery with a deadly weapon. After he pled true to the State's enhancement allegation, the trial court sentenced Jackson to fifty years' imprisonment. On appeal, Jackson argues (1) that the evidence is legally insufficient to support the jury's verdict, (2) that the testimony of an accomplice witness was not sufficiently corroborated, (3) that the trial court erred in failing to submit an accomplice-witness instruction in the jury charge, and (4) that his counsel rendered ineffective assistance in failing to request an accomplice-witness instruction.

We find that the evidence was legally sufficient to support the jury's verdict. We also conclude that the testimony of the accomplice witness was sufficiently corroborated. While we find that the trial court erred in omitting an accomplice-witness instruction in the jury charge, we also conclude that Jackson was not egregiously harmed by the omission. Finally, we hold that Jackson is unable to show that but for counsel's ineffectiveness, if any, there is a reasonable probability that the result of the proceeding would have been different. Consequently, we affirm the trial court's ruling.

## I. Factual Background

At gunpoint, two men beat and robbed twenty-one-year-old Spencer Sweeden as he was walking home through their neighborhood at approximately 3:00 a.m. At trial, Sweeden described the events involving the aggravated robbery in detail. He testified that a man wearing a "vest with many pockets" rode past him on a bicycle and entered the garage of a home on Washington Street in Commerce, Texas. At trial, Sweeden identified the man on the bicycle as Jackson. According to Sweeden, Jackson and a taller man with "cornrows" and wearing a t-shirt and basketball shorts exited the home and approached Sweeden on the street. Sweeden identified Jackson's accomplice as Dean.[1]

Sweeden testified that Jackson and Dean warned him that he was walking

---

1. The evidence at trial demonstrated that Sweeden had also identified Jackson and Dean as the perpetrators of the crime in a photographic lineup conducted a few days after the robbery.

through "a predominately black neighborhood" in a manner that made him very uncomfortable. In an attempt to dissuade Jackson and Dean from harming him, Sweeden, who was carrying a carbon dioxide (CO2) pistol, told the men that he "was strapped." Undeterred, Jackson grabbed Sweeden's CO2 pistol and started beating him. Sweeden testified that Dean pointed a shotgun toward him while Jackson beat him and stole his wallet, keys, and hat. Sweeden said that Jackson and Dean allowed him to escape after they both reminded him "that the streets were real and that [he] didn't belong there." Sweeden ran home and called 9–1–1.

Within five minutes of the emergency call, police officers from the Commerce Police Department arrived at Sweeden's home and obtained his description of the suspects and information about the location of the crime. Officer Marcus Cantera soon spotted Jackson riding his bicycle while wearing the vest described by Sweeden. Cantera stopped Jackson and found Sweeden's identification in the stolen wallet. He arrested Jackson and transported him to the Commerce Police Department.[2] Soon thereafter, the police returned Sweeden's wallet, keys, and hat to him.

At Jackson's trial, Dean admitted that he held Sweeden at gunpoint while Jackson beat and robbed him. However, Dean claimed that he initially stayed in the garage while Jackson approached Sweeden in the street. Dean further stated that he only decided to join the altercation after Jackson stated that Sweeden had a weapon. Dean also indicated that Jackson did not know that he was going to bring a shotgun to the fray.

After hearing this evidence, the jury found Jackson guilty of aggravated robbery and entered a deadly-weapon finding.

## II. The Evidence Was Legally Sufficient to Convict Jackson of Aggravated Robbery

In his first point of error on appeal, Jackson argues that the evidence is legally insufficient to support the jury's finding that he committed aggravated robbery. Yet, Jackson does not deny either that he beat Sweeden, that he stole from him, or that Dean used a shotgun during the offense. Instead, he asserts (1) that the evidence was insufficient to "establish that there was a plan or agreement to commit robbery with Dean" and (2) that "there is no evidence on which the jury could [have] inferred that [Jackson] intended to promote or assist in the use of a deadly weapon."

### A. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim.App.2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex.App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781); *Clayton v.*

---

**2.** Dean, who was not immediately apprehended, soon turned himself in.

*State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

■ Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 240.

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property being stolen, such person (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02 (West 2011). That person commits aggravated robbery if he or she "uses or exhibits a deadly weapon" during the robbery. TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). The indictment alleged, and the State was required to prove, that Jackson,

> individually and acting together with EDDIE JAMES DEAN, JR.[,] did then and there while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place SPENCER SWEEDEN in fear of imminent bodily injury or death, and EVENDER GENE JACKSON, JR.[,] did then and there use or exhibit a deadly weapon, to wit: a shotgun.

As demonstrated by the State's indictment, Jackson was charged individually and as a party to the offense, and the trial court instructed the jury on the law of the parties. "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). A "person is criminally responsible for an offense committed by the conduct of another if ... acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). "Each party to an offense may be charged with commission of the offense." TEX. PENAL CODE ANN. § 7.01(b) (West 2011).

### B. Analysis

**1. Legally Sufficient Evidence Supports the Finding that there Was an Agreement Between Jackson and Dean to Commit Aggravated Robbery**

■ "Evidence is sufficient to convict the defendant under the law of parties where he is physically present at the commission of the offense, and encourages the commission of the offense by words or other agreement." *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App.1994); *see Beier v. State,* 687 S.W.2d 2, 3 (Tex.Crim. App.1985) (citing *Tarpley v. State,* 565 S.W.2d 525 (Tex.Crim.App.1978)). "The agreement, if any, must be before or contemporaneous with the criminal event." *Beier,* 687 S.W.2d at 3–4 (citing *Urtado v. State,* 605 S.W.2d 907 (Tex.Crim.App. 1980)). "Mere presence alone without evidence of intentional participation is insufficient." *Id.* at 4 (citing *Acy v. State,* 618 S.W.2d 362 (Tex.Crim.App.1981)).

■ "A conviction for an aggravated offense must be supported by evidence that the defendant committed, or was criminally responsible for committing, the

aggravating element." *Wyatt v. State*, 367 S.W.3d 337, 341 (Tex.App.—Houston [14th Dist.] 2012, pet. dism'd) (citing *Stephens v. State*, 717 S.W.2d 338, 340–41 (Tex.Crim. App.1986)). Thus, in an aggravated robbery case involving a defendant who is charged as a party to the offense, it is insufficient to merely prove that the defendant intended to promote or assist a theft; rather, the State must prove that the defendant intended to promote or assist an aggravated robbery by soliciting, encouraging, directing, aiding, or attempting to aid another person in committing the aggravated robbery. *See Wyatt*, 367 S.W.3d at 341; *Wooden v. State*, 101 S.W.3d 542, 548 (Tex.App.—Fort Worth 2003, pet. ref'd). "In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Beier*, 687 S.W.2d at 4. "Circumstantial evidence may be used to prove one is a party to an offense." *Id.*

■ Here, Sweeden recalled that both Jackson and Dean approached him on the street at the same time and began intimidating him. Sweeden attempted to halt the altercation by informing Jackson and Dean that he had a weapon. Dean testified the he got his shotgun when he heard that Sweeden had a weapon. But, Sweeden testified that Jackson was striking him from behind when he noticed that Dean, who was in front of him, was holding a shotgun and pointing it towards him. The following excerpt from Sweeden's testimony indicated that Jackson stole Sweeden's wallet, keys, and hat while Dean was holding him at gunpoint:

Q And was he saying anything as he had the shotgun aimed towards you?

A No. He was actually quiet.

Q What about the other person? Was he—the one that was punching you in the head . . ., what was he saying?

A He just kept asking me what else I had and then took everything that I had.

Q So that's the person that took everything from you?

A Yes, the person on the bicycle that was behind me beating me.

Q And what was it that he took from you specifically?

A He had token [sic] my wallet, my keys, and a hat that I had had, plus the CO2 pistol.

Q Wallet, keys, hat, and a CO2 pistol?

A Yes, sir.[3]

Sweeden's testimony about the concerted efforts of both Jackson and Dean is sufficient to establish beyond a reasonable doubt that Jackson committed aggravated robbery as a party to the offense. The evidence demonstrates actions by both Jackson and Dean "which show an understanding and common design to do the prohibited act." *Id.* Accordingly, when viewing the entire record in the light most favorable to the verdict, we conclude that a

---

3. Dean's testimony, excerpted below, also supports this conclusion:

Q So tell the jury what exactly happened there on Washington Street in the early morning hours of June 15, 2015.

A We robbed a guy.

. . . .

Q And what was your role in robbing him?

A Just stuck him up.

. . . .

Q Pulled the shotgun out?

A Yes, sir.

Q And then who robbed him?

A Evender Jackson.

rational jury could have found, beyond a reasonable doubt, that an agreement existed between Jackson and Dean to commit the offense of aggravated robbery.

## 2. Legally Sufficient Evidence Supports the Deadly– Weapon Finding

Jackson also argues that the jury's deadly-weapon finding is not supported by legally sufficient evidence. We disagree.

The Code of Criminal Procedure authorizes a deadly weapon finding "when it is shown that a deadly weapon ... was used or exhibited during the commission of a felony offense ... and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp.2015). Therefore, Section 3g(a)(2) of Article 42.12 authorizes

> an affirmative finding of the use or exhibition of a deadly weapon even against a defendant who never used or brandished a deadly weapon during the commission of the offense, so long as he (1) was a party to an offense ... and (2) knew such a weapon would be used or exhibited.

*Sarmiento v. State,* 93 S.W.3d 566, 569 (Tex.App.—Houston [14th Dist.] 2002, pet. ref'd) (en banc).

 "[W]here the use of a deadly weapon is an element of the offense, the State automatically carries the burden of proving the defendant knew a weapon would be used or exhibited in the commission of the offense." *Id.* at 570. "Thus, before jurors were authorized to find appellant guilty, *even as a party,* they first had to believe beyond a reasonable doubt that appellant knew a deadly weapon would be used in the commission of the offense." *Id.* Specifically, " 'there must be direct or circumstantial evidence that ap-

pellant not only participated in the robbery before, while, or after a [deadly weapon] was displayed, but did so while being aware that the [deadly weapon] would be, was being, or had been, used or exhibited during the offense." ' *Wyatt,* 367 S.W.3d at 341 (quoting *Anderson v. State,* No. 14–00–00810–CR, 2001 WL 1426676, at *1 (Tex.App.—Houston [14th Dist.] Nov. 15, 2001, pet. ref'd) (not designated for publication)).

 Dean testified that Jackson did not know that he had a weapon before its exhibition during the commission of the offense. Jackson points to Dean's testimony as support for his argument that the evidence was insufficient to support the jury's deadly-weapon finding. Nevertheless,

> in the context of a prolonged and continuing assault involving a deadly weapon[,] ... we do not construe the requirement that a party to the offense know that a deadly weapon "would be used" as requiring proof that the party had that knowledge before the assault commenced. It is sufficient for a deadly weapon finding against a party to an offense if the proof shows that, during the course of an offense, it was apparent to the party that a deadly weapon was being used or was about to be used and that party continues to participate in the commission of that offense.

*Crutcher v. State,* 969 S.W.2d 543, 546 (Tex.App.—Texarkana 1998, pet. ref'd).

In *Crutcher,* as in this case, the defendant was charged with aggravated robbery. *Id.* at 545. The victim testified that "he answered his door late at night and was attacked by two men, one of whom he identified as [the defendant]." *Id.* The victim further testified that "[one] man held his arms while the other beat him" and that "they were using a flashlight."

He went on to say that "he knew he was hit with a flashlight," but he also stated that he was not positive what all they used to hit him. *Id.* Crutcher argued that "the evidence [was] not sufficient to support the jury's finding that he personally, or as a party, used a deadly weapon." *Id.* at 546. We rejected Crutcher's argument, holding as follows:

> In this case, it became obvious during the commission of the crime that a flashlight or some object was being used as a deadly weapon.... Even if Crutcher was not the one who actually used the weapon and did not know before they entered the house that his accomplice intended to do so, it would have become obvious to him that his accomplice did have such an intent as they continued to participate in this prolonged and brutal attack upon the victim. Crutcher's continuing active assistance in the commission of the crime constitutes his acceptance of his accomplice's act in its entirety, including knowledge of the use of the flashlight or other object as a deadly weapon. We find the evidence is sufficient to support the jury's affirmative finding of the use of a deadly weapon.

*Id.* at 546–47.

⬛ Here, based on Sweeden's testimony cited above, the jury could have determined (1) that Jackson was aware that Dean was holding a weapon and (2) that Jackson proceeded to steal items from Sweeden's person with knowledge that the firearm was pointed in Sweeden's direction. As in *Crutcher*, even if Jackson did not know before the attack began that Dean intended to use a shotgun, "it would have become obvious to him that [Dean] did have such an intent as they continued to participate in this prolonged and brutal attack upon the victim." *Id.* Accordingly, when viewing the entire record in the light

most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Jackson "knew such a weapon would be used or exhibited." *Sarmiento*, 93 S.W.3d at 569.

We overrule Jackson's first point of error.

## III. The Accomplice's Testimony Was Sufficiently Corroborated

⬛ In his second point of error, Jackson argues that Dean's testimony was not sufficiently corroborated to satisfy the "accomplice witness rule" found in Article 38.14 of the Code of Criminal Procedure. According to that Article, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). When evaluating the sufficiency of corroborating evidence under Article 38.14, we " 'eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime.' " *Malone v. State*, 253 S.W.3d 253, 257 (Tex.Crim.App.2008) (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim. App.2001)). The tends-to-connect standard does not present a high threshold as the "evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id.*; *see Cantelon v. State*, 85 S.W.3d 457, 461 (Tex.App.—Austin 2002, no pet.). "Rather, the evidence must simply link the accused in some way to the commission of the crime." *Malone*, 253 S.W.3d at 257. As the Texas Court of Criminal Appeals has stated,

> No precise rule can be formulated as to the amount of evidence required to cor-

roborate. The non-accomplice evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. Nor must the non-accomplice evidence directly link the accused to the commission of the offense. While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration.

*Dowthitt v. State,* 931 S.W.2d 244, 249 (Tex.Crim.App.1996) (citations omitted).

■ This was not a case involving mistaken identity or mere innocent presence. Here, Sweeden's and Cantera's testimony linked Jackson to the crime and directly implicated him as a perpetrator of the aggravated robbery. Thus, Dean's testimony was sufficiently corroborated.[4] We overrule Jackson's second point of error.

## IV. Lack of an Accomplice–Witness Instruction Was Not Egregiously Harmful

■ Jackson argues that he was entitled to an accomplice-witness jury instruction and that the trial court erred in failing to submit such an instruction. Our review of alleged jury charge error involves a two-step process. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App.1994); *see Sakil v. State,* 287 S.W.3d 23, 25–26 (Tex. Crim.App.2009); *Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App.2005). Initially, we determine whether an error occurred and then "determine whether sufficient harm resulted from the error to require reversal." *Abdnor,* 871 S.W.2d at 731–32; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g); *see also Middleton v. State,* 125 S.W.3d 450, 453 (Tex.Crim.App.2003).

■ The trial court shall "deliver to the jury ... a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). It is undisputed that Dean was an accomplice in the aggravated robbery. Accordingly, Jackson was entitled to an accomplice-witness instruction indicating that a conviction is not valid without corroboration of an accomplice's testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Further, a trial court must instruct the jury sua sponte in accordance with Article 38.14 where applicable. *Freeman v. State,* 352 S.W.3d 77, 82–83 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding that trial court erred in failing to instruct jury sua sponte that testimony of accomplice was required to be corroborated in accordance with Article

---

4. Jackson appears to argue that the evidence is insufficient to support the jury's verdict and deadly-weapon finding because it is only based on Dean's testimony which was not corroborated. This argument attempts to merge the legal sufficiency standard with the accomplice-witness rule. Yet, a challenge of insufficient corroboration is not the same as a challenge of insufficient evidence to support the verdict as a whole. *Cathey v. State,* 992 S.W.2d 460, 462–63 (Tex.Crim.App.1999) ("The accomplice witness rule is a statutorily imposed sufficiency review and is not de-

rived from federal or state constitutional principles that define the ... sufficiency standards.... The burden established by the Legislature is that there be other evidence *tending to connect* the defendant with the offense."). Accordingly, legal sufficiency standards of review are not applicable to a review of accomplice witness testimony under Article 38.14 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Malone,* 253 S.W.3d at 257 (citing *Druery v. State,* 225 S.W.3d 491, 498 (Tex.Crim.App.2007)).

38.14). Thus, the trial court erred in omitting the Article 38.14 instruction.

 Next, we discuss whether the failure to include the accomplice-witness instruction harmed Jackson. The level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. "Where the evidence clearly shows a witness is an accomplice as a matter of law, the trial court must so instruct the jury, but if the appellant fails to object to the omission of the instruction, as in [Jackson's] case, he or she must prove egregious harm to prevail on appeal." *Hall v. State*, 161 S.W.3d 142, 149 (Tex.App.—Texarkana 2005, pet. ref'd); *see Ngo*, 175 S.W.3d at 743–44 (citing *Almanza*, 686 S.W.2d at 171); *see also Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App.2004). In determining whether egregious harm has been shown, we "must take the entire record into account, as in any *Almanza* analysis." *Casanova v. State*, 383 S.W.3d 530, 534 (Tex.Crim.App.2012).

 "Under the 'egregious harm standard,' the omission of a corroborating-evidence instruction may be rendered harmless if [evidence] other . . . than the testimony of the accomplice witness or informant does exist that fulfills the purpose of the instruction." *Simmons v. State*, 205 S.W.3d 65, 77 (Tex.App.—Fort Worth 2006, no pet.) (citing *Herron v. State*, 86 S.W.3d 621, 632 (Tex.Crim.App.2002)). "This is said to be so because the instruction merely informs the jury that it cannot use the testimony of the accomplice or the informant unless it is first determined that other evidence exists connecting the defendant to the offense." *Id.* Once it is determined that such other evidence exists, the purpose of the instruction may have been fulfilled, but this is not always true. *Id.* If the corroborating nonaccomplice evidence

is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive," the omission of the instruction can be egregiously harmful. *Hall*, 161 S.W.3d at 150 (quoting *Herron*, 86 S.W.3d at 632).

 "A harm analysis for error in omitting the cautionary instruction on the requirement of corroborating evidence must be 'flexible,' taking into consideration both the existence and the strength of such other evidence." *Simmons*, 205 S.W.3d at 77 (citing *Herron*, 86 S.W.3d at 632). "In determining the strength of corroborating evidence, we are instructed that we must examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the offense." *Id.*

Here, we have previously determined that Dean's testimony was sufficiently corroborated by testimony from Sweeden and Cantera. Specifically Sweeden's testimony as a victim of the offense was reliable, strong, and was legally sufficient for a jury to find (1) that Jackson was aware that Dean was holding a weapon and (2) that Jackson, with knowledge that the firearm was pointed in Sweeden's direction, proceeded to steal items from Sweeden's person. Cantera's testimony that Jackson was in possession of the items stolen from Sweeden further connected Jackson to the offense. Taking the entire record into account, we conclude that Jackson was not egregiously harmed by the trial court's omission of the accomplice-witness instruction.

We overrule Jackson's third point of error.

## V. Jackson Cannot Meet the Second *Strickland* Prong Required to Prevail on his Ineffective Assistance of Counsel Claim

 Finally, Jackson argues that his counsel was ineffective in failing to object

to the omission of the accomplice-witness instruction. As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State,* 187 S.W.3d 475, 483 (Tex.Crim.App. 2006). "Ineffective assistance of counsel claims are evaluated under the two-part test formulated in *Strickland,* requiring a showing of both deficient performance and prejudice." *Johnson v. State,* 432 S.W.3d 552, 555 (Tex.App.—Texarkana 2014, pet. ref'd) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999); *Fox v. State,* 175 S.W.3d 475, 485 (Tex.App.—Texarkana 2005, pet. ref'd)).

"To prevail on his ineffective assistance claims, [Jackson] must prove by a preponderance of the evidence that (1) his counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense." *Id.* (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000)). "Failure to satisfy either prong of the *Strickland* test is fatal." *Id.* (citing *Ex parte Martinez,* 195 S.W.3d 713, 730 (Tex. Crim.App.2006)). Thus, we need not examine both *Strickland* prongs if one cannot be met.[5] *Id.*

The prejudice prong requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the out-

come." *Id.* Thus, in order to establish prejudice,

> an applicant must show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable." [*Strickland,* 466 U.S.] at 687, 104 S.Ct. 2052.... It is not sufficient for Applicant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052.... Rather, [he] must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052.

*Ex parte Martinez,* 330 S.W.3d 891, 901 (Tex.Crim.App.2011).

■■ As for the second *Strickland* prong, Jackson argues only that the he was prejudiced by the omission of the accomplice-witness instruction because "the corroborating evidence in this case was either wholly lacking, or so weak as to provide no credible corroboration." We have previously determined that Dean's testimony was sufficiently corroborated. Moreover, we have found that Sweeden's testimony alone was legally sufficient to convict Jackson of the offense. Accordingly, we find that Jackson has failed to demonstrate how he was prejudiced by counsel's failure to object to the omission of the accomplice-witness instruction. We overrule Jackson's last point of error.

## VI. Conclusion

We affirm the trial court's judgment.

---

5. Dean testified that Jackson was not aware of the shotgun before the robbery. The State notes that this testimony was favorable to Jackson and argues that sound trial strategy supported counsel's decision not to object to the omission of the accomplice-witness instruction. Because we conclude that Jackson cannot meet the *Strickland* prejudice prong, we express no opinion on the State's argument referencing the first *Strickland* prong.