

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00470-CR

———————————————

MARCELLUS D. BRIGGS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1562470R

---

Before Gabriel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Gabriel

**MEMORANDUM OPINION**

Appellant Marcellus D. Briggs appeals from his convictions for aggravated robbery with a deadly weapon and burglary of a habitation with the intent to commit sexual assault. He contends in four points that the evidence was insufficient to support his convictions because (1) there was no evidence that he committed robbery, (2) there was no evidence that he intended to commit sexual assault, and (3) there was no evidence that he used a deadly weapon during the robbery. He also asserts that the accomplice witness's testimony was insufficiently corroborated. Because we find the evidence satisfied due process and that the non-accomplice evidence tended to connect or link Briggs to the offenses in some way, we affirm the trial court's judgments.

## I. BACKGROUND

### A. THE OFFENSES

Tamara Cooper[1] was shopping online for collectible figurines in her Fort Worth apartment on July 19, 2017, from approximately 11:00 p.m. until midnight. She intended to get back online at 2:00 a.m. on July 20 to buy a newly released figurine after she took a nap. Shortly after she lay down, she heard a knock on her bedroom window followed by a knock at her front door. When Cooper looked through the door's peephole, she saw an African-American woman, later identified as

---

[1]This is an alias. *See* Tex. R. App. P. 9.8 cmt.; Tex. App. (Fort Worth) Loc. R. 7.

Frankie Rubell, who seemed distressed. Cooper opened the door, and Rubell stated that she thought "Jerome" lived there. As Cooper began to explain that there was no Jerome in her apartment, Cooper saw "somebody, an African-American male," run out from around a corner. The man grabbed Cooper and hit her on her face with what felt like the handle of a gun, causing her glasses to fly off her face as she slumped to the floor inside the front door of her apartment. Although Cooper did not see a gun, she later heard "metal moving," which she agreed sounded like the "metal cocking of the gun or racking of the gun." The man put a pillowcase over Cooper's head. Her hands were bound in front of her body and she was told that if she did not "shut up," "they [would] have to use the gun." The man and Rubell asked Cooper where her valuables were and searched the apartment. When Cooper asked to be moved from the floor, the duo put her on the couch and covered her with a blanket from the top of her head, over the pillowcase, to her knees. Cooper was told that if she did not stop moving and making noise, she and her cats would be shot.

The man then asked Cooper about her debit card, which had been found in Cooper's purse. Cooper told them that she had $300 in her account and after being threatened with the gun again, gave them her PIN. Cooper heard what sounded like the couple texting on phones that had buttons instead of a touchscreen. Rubell left to withdraw Cooper's money with the PIN.

After Rubell left, the man told Cooper that he had seen a box of condoms beside her bed, that he knew "what kind of girl" she was, and that he wanted to see

3

her female sexual organ. Cooper begged the man not to rape her, but the man forcibly took her pants off and made her spread her legs on the couch. The man penetrated Cooper's female sexual organ with his fingers without her consent. After he received a text that the PIN had worked, the man told Cooper to put her pants back on.

When Rubell returned, she and the man took Cooper to her bedroom, Rubell bound Cooper's legs after she lay on the bed, and Rubell covered her with a blanket. Rubell told Cooper she covered her because "you never know with guys what they're thinking, what they're going to do to you." Cooper was told that if she called the police or cancelled her credit cards, they would come back and use the gun on her. Rubell and the man left after telling Cooper to count backwards from 100 before sitting up, again telling her that they would "use this gun" if she did not comply.

## B. THE AFTERMATH

Cooper eventually freed herself and discovered that her televisions, smartphone, DVD players, gaming devices, video games, computer, iPad, DVD movies, boots, fan, and alcohol had been taken. At 3:00 a.m. on July 20, Cooper walked to her mother's house, who called the police. Cooper was able to identify Rubell from a photo array but could not similarly identify the man. She described him as an African-American male, approximately five feet and nine to ten inches tall, with a medium build. Cooper was sent to a hospital for a sexual-assault exam. She had bruising and scratches on her face and body but no pelvic injuries. Cooper recounted

4

what happened to the nurse examiner; her statement was consistent with her later trial testimony.

Surveillance of the ATM where Cooper's money had been withdrawn showed Rubell drive up in Briggs's Suburban and use Cooper's ATM card. Rubell was also recorded arriving at a pawn shop in the Suburban on July 20 and selling 101 DVD movies and 8 video games. The police department released the surveillance footage and information about the Suburban, asking for the public's assistance in identifying the offenders. The department received several tips that the woman shown on the footage was Rubell; that her boyfriend, Briggs, was the owner of the Suburban; and that Rubell and Briggs were staying in a motel room in Grand Prairie.

On July 21, the day after the robbery, Rubell was arrested in the Grand Prairie motel room where she and Briggs had been staying; Briggs was arrested "a couple blocks away." Officers had seen Briggs coming and going from the motel room shortly before Rubell was arrested. Briggs and Rubell had cell phones that did not have touchscreens when they were arrested. Officers towed the Suburban seen on the surveillance videos from the hotel and discovered that a VIN number noted on a paper tag on the rear window "came back to a Cadillac and hadn't been issued in over a year." The boxes for Rubell's and Briggs's phones were found in the Suburban. In the motel room, officers found Cooper's boots, televisions, DVD player, checkbook, laptop, microwave, fan, gaming device, and smartphone. Two detectives found some

of Cooper's stolen property, including 70 DVDs, at the pawn shop where Rubell had been recorded the day before.

An analysis of Rubell's and Briggs's phones revealed that they knew officers were watching their motel room shortly before they were arrested and knew they needed to move the Suburban. In the text exchange, Rubell warned Briggs to not "come to the room yet"; Briggs told Rubell that she was "looking at life" and that she should delete his text messages. Rubell's and Briggs's cell-phone records showed that they were near Cooper's apartment during the time of the offenses. During this same time, Rubell and Briggs were communicating only with each other on their phones by text. Neither Briggs's fingerprints nor DNA was found in Cooper's apartment.

## C.  THE TRIAL

Briggs was indicted with aggravated robbery with a deadly weapon—a firearm—and several counts of burglary of a habitation.[2] The indictment included a deadly-weapon notification, alleging that Briggs had used or exhibited a firearm during the charged burglaries of a habitation, and a habitual-offender notice.[3] Before trial, the State notified the court that Rubell would be called as a witness at Briggs's trial and that it had agreed to give her use immunity in exchange for her testimony, which

---

[2]Rubell was also indicted for burglary and aggravated robbery.

[3]Briggs had been finally convicted of burglary of a habitation in 2008 and again in 2014.

6

the trial court approved. *See* Tex. Code Crim. Proc. Ann. art. 32.02; *Smith v. State*, 70 S.W.3d 848, 850–51 (Tex. Crim. App. 2002).

Rubell testified that she and Briggs drove in Briggs's Suburban to Cooper's apartment complex so Briggs could look for an apartment where Rubell could "knock on the door." Rubell confirmed the details of the ensuing robbery with the exception of the use of a gun, which she denied. Rubell admitted that she and Briggs took "a lot" from Cooper, including her money, televisions, movies, boots, microwave, and fan. The State introduced two letters Briggs had sent to Rubell while he had been in jail after his arrest. Briggs told Rubell that he had heard she would testify against him, that "it's all on [him] [he] did thi[s] [expletive] to [himself]," and that he had previously asked her to take the blame for the offenses because "this is your first time this is [his] fourth time." He also asked Rubell to tell "them that it was not me." In a letter dated five days later, Briggs recognized that his "life [was] over" because he had "been down three times already." He also told Rubell that he was "[s]orry [he] couldn't be a better person."

The jury found Briggs guilty of aggravated robbery with a deadly weapon and of one count of burglary of a habitation with the intent to commit sexual assault.[4] *See* Tex. Penal Code Ann. § 29.03(a)(2), § 30.02(a), (d). The jury additionally found that Briggs had used a deadly weapon during the commission of the burglary. *See* Tex.

---

[4]The jury found Briggs guilty of the other burglary counts, but the State abandoned those counts before punishment.

Gov't Code Ann. § 508.145(d); *Duran v. State*, 492 S.W.3d 741, 745 (Tex. Crim. App. 2016). After a punishment hearing at which Briggs pleaded true to the habitual-offender paragraph in the indictment, the trial court assessed Briggs's punishment at concurrent, 65-year terms of confinement.[5] Briggs appeals and argues that the evidence is insufficient to support his convictions and that Rubell's testimony was insufficiently corroborated.

## II. SUFFICIENT CORROBORATING EVIDENCE

Briggs contends that because Rubell's accomplice testimony was not corroborated by other evidence tending to connect Briggs to the charged offenses, the evidence was insufficient to support the jury's convictions. The State concedes that Rubell was an accomplice as a matter of law.

The Code of Criminal Procedure prohibits a conviction based solely on an accomplice witness's testimony unless the testimony is "corroborated by other evidence tending to connect the defendant with the offense committed." Tex. Code Crim. Proc. Ann. art. 38.14. Corroboration of accomplice testimony is not sufficient if such corroborating evidence shows nothing more than the commission of the offense. *Id.*

The determination of sufficient corroboration is distinct from a claim that the evidence did not satisfy due process. *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex.

---

[5]Briggs had elected to have the trial court assess his punishment. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b).

Crim. App. 1999). When evaluating the sufficiency of non-accomplice, corroborating evidence, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Soloman v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). The corroborating evidence need not prove the accused's guilt beyond a reasonable doubt nor does it have to directly link the accused to the commission of the offense. *Casanova v. State*, 383 S.W.3d 530, 538 (Tex. Crim. App. 2012). Rather, the non-accomplice evidence need only link the accused in some way to the crime, allowing a rational fact-finder to conclude that the non-accomplice evidence sufficiently tended to connect the accused to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

There is no threshold amount of non-accomplice corroboration evidence required; courts must judge each case on its own facts. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Even apparently insignificant circumstances may provide sufficient evidence of corroboration. *Cathey*, 992 S.W.2d at 462; *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999). "Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984), *quoted in Smith*, 332 S.W.3d at 443.

Eliminating Rubell's testimony, we conclude that the remaining evidence tended to connect Briggs to the charged offenses such that Rubell's testimony was sufficiently corroborated. Briggs matched Cooper's description of her assailant. *See Turner v. State*, 571 S.W.3d 283, 288 (Tex. App.—Texarkana 2019, pet. ref'd). The police received tips that Rubell and Briggs were responsible for the offenses. *See Odariko v. State*, No. 01-14-00337-CR, 2015 WL 6081432, at *4 (Tex. App.—Houston [1st Dist.] Oct. 13, 2015, no pet.) (mem. op., not designated for publication). Rubell was seen driving a tan Suburban, which was known to be Briggs's, withdrawing money from Cooper's bank account, and pawning items from Cooper's home. Briggs's cellphone records showed that he was in the area of Cooper's Fort Worth apartment at the time of the offenses. *See Ford v. State*, No. 02-18-00071-CR, 2019 WL 1495186, at *4 (Tex. App.—Fort Worth Apr. 4, 2019, no pet.) (mem. op., not designated for publication); *De La Fuente v. State*, 432 S.W.3d 415, 421–22 (Tex. App.—San Antonio 2014, pet. ref'd). And during this time, Briggs and Rubell texted only each other, which connected Briggs to the offenses based on Cooper's testimony that Rubell, whom she later positively identified, was texting with the man in her apartment. *See Smith*, 332 S.W.3d at 442; *Cerna v. State*, 441 S.W.3d 860, 866 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Briggs's phone had buttons, not a touchscreen, which Cooper said she heard when Rubell and the man were texting.

Shortly before they were arrested, a text exchange between Rubell and Briggs showed a consciousness of guilt. *See Cueva v. State*, 339 S.W.3d 839, 881–82 (Tex.

10

App.—Corpus Christi–Edinburg 2011, pet. ref'd).  Much of Cooper's stolen property was found the next day in the motel room that Rubell and Briggs had been sharing and that officers had seen Briggs coming in and out of that day.  *See Keith v. State*, 384 S.W.3d 452, 458 (Tex. App.—Eastland 2012, pet. ref'd).  Briggs's letters to Rubell also showed his consciousness of guilt and that he wanted Rubell to take the blame for the offenses.  *See Simmons v. State*, 282 S.W.3d 504, 506–07, 510–11 (Tex. Crim. App. 2009); *Cueva*, 339 S.W.3d at 882.

The cumulative force of these suspicious circumstances tended to link Briggs in some way to the offenses, allowing a rational jury to conclude that the evidence sufficiently tended to connect Briggs to the offenses.  *See, e.g.*, *Simmons*, 282 S.W.3d at 508–11; *Thomas v. State*, No. 05-14-01589-CR, 2016 WL 259761, at *5 (Tex. App.—Dallas Jan. 21, 2016, pet. ref'd) (mem. op., not designated for publication).  We overrule point one.

## III.  SUFFICIENCY OF THE EVIDENCE TO SUPPORT CONVICTIONS

Briggs argues that his convictions violated due process because there was no evidence that he was with Rubell in Cooper's apartment during the offenses.  He alternatively argues that if the evidence was sufficient to show he was present, the evidence was insufficient to show that he committed the burglary with the intent to commit sexual assault or that he used a deadly weapon during the robbery.

In our due-process review of the sufficiency of the evidence to support Briggs's convictions, we view all of the evidence, including accomplice-witness testimony, in

11

the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements of the offenses beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). The trier of fact—here, the jury—is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, we may not substitute our judgment for the jury's by re-evaluating those implicit findings. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We must presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

## A. IDENTITY

Briggs asserts that insufficient evidence identified him as the man in Cooper's apartment with Rubell during the offenses. He focuses on Cooper's inability to positively identify him from a photo array and the absence of his DNA or other incriminating physical evidence at the crime scene. He also relies on Rubell's admission at trial that she had been untruthful during parts of her statements to the police and that officers viewed her as evasive and uncooperative.

12

We must consider Rubell's testimony in our review of the sufficiency of the evidence, and it was the jury's responsibility to assay her credibility and the weight to be given her testimony, which we may not second-guess. *See Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017); *McDuff*, 939 S.W.2d at 614. And we may not focus on what evidence is missing but on what evidence was before the jury. *See Escamilla v. State*, No. 02-13-00317-CR, 2014 WL 4463121, at *2 (Tex. App.—Fort Worth Sept. 11, 2014, no pet.) (mem. op., not designated for publication); *Marquez v. State*, No. 05-07-00635-CR, 2008 WL 2043044, at *4 (Tex. App.—Dallas May 14, 2008, no pet.) (mem. op., not designated for publication); *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

With these parameters in mind, it is clear that the evidence was sufficient to support the jury's finding that Briggs was the man with Rubell in Cooper's apartment. *See Lancon v. State*, 253 S.W.3d 699, 706–07 (Tex. Crim. App. 2008); *Harmon*, 167 S.W.3d at 614. Rubell testified that Briggs was the man in Cooper's apartment and that he actively participated in the offenses. And the non-accomplice evidence we previously discussed further identified Briggs as the perpetrator. We overrule points two and four.

## B. INTENT TO COMMIT SEXUAL ASSAULT

Briggs next argues that there was no evidence that when he entered Cooper's apartment, he did so with the intent to commit sexual assault. Briggs concedes that Cooper's testimony regarding the sexual assault "appears credible," but he contends

13

that there is no evidence he was the perpetrator. Again, Briggs points to the lack of any physical evidence to connect him to a sexual assault. But Rubell testified that she left Briggs alone in the apartment with Cooper while she tried to withdraw money from Cooper's bank account. Cooper's admittedly credible testimony and Rubell's testimony that Briggs was alone in the apartment with Cooper were sufficient to support the jury's finding that Briggs entered Cooper's apartment with the intent to commit sexual assault. *See generally Cary v. State*, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016) ("The necessary specific intent can be proven through circumstantial evidence, and we may rely on events that took place before, during, or after the commission of the offense."). We overrule point three.

## C. USE OF A DEADLY WEAPON

Briggs argues that the evidence was insufficient to show that he used a deadly weapon during the robbery.[6] Rubell denied that a gun was used during the offenses but allowed that if one were used, it would have been a BB gun.[7] Briggs relies on Rubell's denial and on the facts that Cooper never saw a gun and that a gun was not

---

[6]Briggs does not clearly challenge the jury's separate finding that Briggs used a deadly weapon during the burglary offense.

[7]We do not address Briggs's argument that the evidence was insufficient to show that a BB gun, if used, was capable of causing serious bodily injury or death. The indictment alleged that Briggs used a firearm, and the State is bound by that allegation. *See Rojas v. State*, 986 S.W.2d 241, 246 (Tex. Crim. App. 1998); *Williams v. State*, 940 S.W.2d 802, 808 (Tex. App.—Fort Worth 1997, pet. ref'd).

recovered at the crime scene to support his argument that the deadly-weapon portion of the robbery judgment must be deleted.

The use or exhibition of a deadly weapon may be proved through circumstantial evidence; thus, a victim's failure to see the weapon is not fatal to the State's case. *See Hernandez v. State*, 501 S.W.3d 264, 268–69 (Tex. App.—Fort Worth 2016, pet. ref'd). As the State points out, a firearm is a deadly weapon, but a gun is not. *See* Tex. Penal Code Ann. § 1.07(a)(17); *Lee v. State*, No. 02-17-00379-CR, 2019 WL 3491648, at *2 (Tex. App.—Fort Worth Aug. 1, 2019, pet. ref'd) (mem. op., not designated for publication). Even so, testimony that uses terms such as gun or revolver—terms "in close proximity to a weapon"—will sufficiently authorize a jury's deadly-weapon finding. *Leadon v. State*, 332 S.W.3d 600, 610 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Whether an object qualifies as a deadly weapon depends on the evidence presented. *Lane v. State*, 151 S.W.3d 188, 191 n.5 (Tex. Crim. App. 2004); *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. [Panel Op.] 1983).

Cooper testified that she did not see the gun but that it felt like she was hit with the handle of a gun, knocking her glasses off, causing her to "slump to the ground," and giving her tunnel vision. By the time Cooper arrived at the hospital for a sexual-assault exam, she had a bruised, swollen eye where she had been hit. Cooper testified that Rubell and Briggs repeatedly threatened to use the gun on her and her cats if she failed to comply with their orders. *See Cruz v. State*, 238 S.W.3d 381, 389 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("Appellant's threatening the victim with the gun

15

in itself suggests that it is a firearm rather than merely a gun of the non-lethal variety . . . ."). Although Cooper was unfamiliar with guns, she stated that she heard a metal sliding sound, similar to the sound she had heard guns make on television shows and in movies. Rubell testified that a gun was not used during the offenses but she also testified that she did not see what Briggs had in his hand when he hit Cooper in the face. Again, the jury was entitled to disbelieve Rubell's self-serving assertion that a gun was not used. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Montgomery*, 369 S.W.3d at 192. We conclude that the cumulative force of the evidence allowed the jury to rationally and reasonably infer that Briggs used a deadly weapon during the robbery. *See, e.g.*, *Gonzales v. State*, No. 04-17-00263-CR, 2018 WL 5621879, at *5 (Tex. App.— San Antonio Oct. 31, 2018, pet. ref'd) (mem. op., not designated for publication); *Schneider v. State*, 440 S.W.3d 839, 843 (Tex. App.—Austin 2013, pet. ref'd). We overrule point five.

## IV. CONCLUSION

The evidence corroborating Rubell's accomplice testimony did more than show the commission of the offenses; it connected Briggs in some way to their commission. Thus, the corroborating evidence sufficiently linked Briggs to the offenses. Similarly, the evidence was sufficient for due-process purposes to establish that Briggs was the man with Rubell in Cooper's apartment, that Briggs entered Cooper's apartment with the intent to commit sexual assault, and that he used a firearm during the robbery.

Accordingly, we overrule Briggs's points and affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 16, 2020