

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00144-CR

_____

COREY HAYES PARKER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28,778

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# OPINION

During a police raid of his Hunt County residence, Corey Hayes Parker allegedly pointed a shotgun at two police officers, Sergeant Mike Radney and Kelly Phillips, of the Hunt County Sheriff's Office. By two separate indictments, Parker was charged with two counts of aggravated assault with a deadly weapon against a public servant. After a jury trial, he was found guilty on both counts and sentenced to eight years' imprisonment for each offense, with the sentences to run concurrently.

Here, Parker appeals from his conviction regarding Radney and contends that the evidence supporting his conviction was legally insufficient.[1]

We affirm the trial court's judgment.

## I. Factual Background

On August 2, 2012, eight officers of the Hunt County Sheriff's Office executed a no-knock search warrant at a two-bedroom mobile home in Hunt County. The officers were searching for Parker and Kelli Locke. After a sheriff's deputy broke down the home's front door, officers used flash-bang devices to stun and distract the trailer's occupants while other officers entered the home. Deputy Henry Potts testified that, as the officers entered and spread into the home's other rooms, they were announcing, "Sheriff's office; search warrant; sheriff's office; search warrant." Other officers testified that, as they entered the trailer's other rooms, they shouted the phrases "sheriff's office" and "search warrant."

---

[1]Parker also appeals from the separate conviction for aggravated assault against a public servant regarding Phillips under our cause number 06-15-00145-CR. These cases were both consolidated for trial. Parker has filed a single, consolidated brief challenging the legal sufficiency of the evidence supporting both convictions.

The officers found and secured Locke, who was lying on the living room couch, and two other occupants, later identified as Dakota Jeffcoat and Brittney Locke, who were asleep in one of the home's two bedrooms. After entering, Radney went to the other bedroom and, after kicking the door open, saw the doors to the bedroom's closet and adjoining bathroom close simultaneously. Radney shouted, "[s]heriff's office; search warrant," and when his backup officer, Phillips, reached the bedroom, the two of them entered the room. A woman, later identified as Tiffany Lewis, opened the bathroom door and, pursuant to the officers' commands, got on the floor, where Radney patted her down while keeping his rifle aimed at the still-closed closet door.

Radney shouted again, "Sheriffs office; search warrant." Phillips and Radney heard movement in the closet, so Radney quickly opened the closet door. He could see that the person in the closet, later identified as Parker, was standing and that one of his hands was on the pistol grip of a shotgun. He testified that he saw a "shotgun sticking out of the darkness" aimed at his chest, and he ducked out of the way, yelling "gun." He heard Phillips fire several times into the closet, and Radney fired three shots from his rifle into the closet. Philips testified that he heard Radney say, "Gun, you better drop it, or you better drop the gun, something to that extent," and when Parker failed to follow Radney's order, Phillips saw that the gun was now pointed at him, so he fired four pistol shots into the closet. Radney testified that the shooting started approximately forty-five seconds to one minute after the police entered the trailer.

Parker did not fire a shot during the incident, though when Texas Ranger Laura Simmons recovered Parker's shotgun at the crime scene, it was loaded with one shell in the chamber. The officers removed the shotgun from the closet, and Phillips and another officer pulled Parker out of

3

the closet and handcuffed him. A box of shotgun shells and a .380 Bersa pistol were recovered by Simmons in the same bedroom closet where Parker was holding the shotgun.

Dr. Thomas West testified that Parker had two gunshot wounds. The wound to the left side of his chest was "right at the junction of his chest and abdomen" and was a "through and through" injury where the shot entered and exited the body without causing internal injuries. The wound to his left buttock required surgery to remove a bullet fragment. West found the wounds to be consistent with those caused by handguns as opposed to rifles.

Parker was indicted on two counts of aggravated assault with a deadly weapon against a public servant. Parker was interviewed by Simmons, and the video recording of that interview was admitted into evidence as State's Exhibit 168A. Parker, testifying in his own defense, claimed that he was shot in the back as he entered the closet and that he did not know that the intruders were police officers. The jury convicted Parker of both counts and sentenced him to eight years' imprisonment for each offense, with the sentences to run concurrently.

## II. Analysis

### A. The Evidence Supporting the Verdict Is Legally Sufficient

In his sole point of error, Parker argues that the evidence supporting his conviction was legally insufficient.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305

S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The indictment in this case alleged that Parker intentionally or knowingly threatened Radney with imminent bodily injury by pointing a firearm at him while knowing that he was a public servant, a sheriff's deputy, executing a search warrant. Parker committed the offense of aggravated assault against a public servant if: (1) he (2) intentionally or knowingly (3) used or exhibited a deadly weapon[2] (4) to threaten Radney with imminent bodily injury (5) while knowing that Radney was a public servant (6) who was lawfully discharging an official duty. *See* TEX.

---

[2]A deadly weapon is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2015).

5

PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2015), § 22.02(a)(2), (b)(2)(B) (West 2011). A jury may infer a defendant's intent from circumstantial evidence such as the defendant's words or conduct. *Lozano v. State*, 359 S.W.3d 790, 814 (Tex. App.—Fort Worth 2012, pet. ref'd).

Here, each officer was wearing a uniform that displayed "SHERIFF" in bright white or yellow lettering across the front and back.[3] Several of the officers testified that, as they entered and spread throughout the house, they were shouting "sheriff's office" and "search warrant." Radney testified that when he kicked open the door to the bedroom where Parker was hiding in the closet, he shouted, "Sheriff's office; search warrant." Prior to opening the closet door, he shouted the announcement again, directing it toward the closet. Radney testified that when he opened the closet door, he saw a "shotgun sticking out of the darkness" pointed at his chest and that he ducked out of the way. Radney thought that Parker "was fixing to come out of that closet."

Parker testified that, when he woke up, he remembers the mirror on the back of his bedroom door exploding, so he tried to get into the closet. He had not heard any voices in the house, just banging noises. As he crawled into the closet, he believes he was shot in the buttock. The shotgun in the closet was "just kind of laying there," either above or beneath his legs. After he got into the closet, he "could hear stuff . . . [but] couldn't really move around . . . and the next thing [he] knew, [he] was being drug out of the closet." Parker denied that he had any reason to believe that the police were involved, as he never heard anyone say, "sheriff's department," "police," "search warrant," or "come out of the closet." Parker did not remember shutting the closet door or "anything else about being . . . in the closet," and he admitted that "there was a lot of stuff" that he

---

[3]A photograph of the officers in these uniforms was admitted into evidence.

could not remember about the events of that night. He denied ever threatening the officers in any way. Simmons testified that, when Parker was interviewed, he claimed that he was shot as he ran into the bedroom closet and that he never pointed the shotgun at anyone.

Here, the jury was the exclusive judge of the credibility of witnesses and the weight to be given their testimony and was solely responsible for reconciling conflicts in the evidence. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). From the evidence, the jury was free to disbelieve Parker's testimony and to infer that Parker knew the men in the bedroom were sheriff's officers serving a search warrant and that he intentionally or knowingly pointed the shotgun at Radney, thereby threatening him with imminent bodily injury. *See id*. As such inferences were more than reasonable under the facts and circumstances of this case, the jury's verdict was supported by legally sufficient evidence. Consequently, we overrule Parker's sole point of error.

We affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:     March 10, 2016
Date Decided:      May 4, 2016

Publish

7