

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00406-CR

———————————————

OTHA LEE DAVIS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1575677D

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Otha Lee Davis appeals his conviction for aggravated robbery. We affirm.

### I.    BACKGROUND

In December 2018, Davis entered a gas station in Tarrant County wearing a ski mask, with his arm extended under his jacket as though he were holding a gun. Davis circled behind the counter and, when the cashier grabbed at his arm, revealed that he was instead holding a knife. The cashier opened the register, jumped over the counter, and ran out of the store. Davis gathered the money and fled.

One wad of bills had a GPS locator hidden inside. When police were dispatched to the store, their tracking dog picked up Davis's scent. Using the locator and the dog, police tracked Davis to the backyard of a house west of the store. They found him sitting on the lawn with money scattered around him on the grass and a knife in his possession.

Davis was indicted for aggravated robbery with a deadly weapon, and the case went to trial in 2019. At the charge conference, Davis requested and received a jury charge on the lesser-included offense of robbery, reasoning that the State had not proved that the knife was a deadly weapon. The jury found Davis guilty of aggravated robbery. The jury also found a repeat-offender enhancement to be true and assessed his punishment at forty-five years' confinement, and the trial court sentenced Davis accordingly. Davis appeals.

## II. ARTICLE 36.15 AND JURY ARGUMENT

Davis's first and second points overlap, so we discuss them together. In both, he contends that there was reversible error when the State informed the jury, during closing argument, that it was Davis who requested a charge on the lesser-included offense of robbery. The State mentioned Davis's request thrice during its closing remarks.[1]

For convenience, we begin with Davis's second point, in which he contends that the State's closing remarks were improper jury argument. However, Davis concedes that he failed to object to the State's argument and that, under Texas law, a defendant normally "waives error by failing to object."

---

[1]Specifically, the State argued as follows:

*Now, the Defendant in this case has requested what we call a lesser-included charge of robbery.* Let me explain to you the difference and distinguishment between those two things.

. . . .

That—none of that negates what you see with your own eyes, because that's how strong the evidence is in this case. *That's why—that is why they said give him robbery instead.* That's all you have, because your eyes tell you—you can see this on video—that he committed a[n] aggravated robbery.

. . . .

*That's why they're asking for robbery*, because they know at least that. *Please give us a lesser included.* Let's give you a second-degree felony rather than a first, because this isn't a deadly weapon. [Emphasis added.]

3

That is true here. "Rights are usually forfeited by a failure to exercise them." *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018). "The right to a trial untainted by improper jury argument is forfeitable." *Id.* Thus, when a defendant fails to timely object, he will forfeit a complaint concerning even an incurably improper jury argument. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Hargrove v. State*, No. 02-18-00437-CR, 2019 WL 2429407, at *2 (Tex. App.—Fort Worth June 6, 2019, no pet.) (mem. op., not designated for publication). Because Davis did not object to the State's argument, he has forfeited any complaint that the argument was improper.

In his first point, Davis contends that the same closing remarks violate Article 36.15, which provides, "Any special requested charge which is granted shall be incorporated in the main charge and shall be treated as a part thereof, and the jury shall not be advised that it is a special requested charge of either party." Tex. Code Crim. Proc. Ann. art. 36.15. "The judge shall read to the jury only such special charges as he gives." *Id.*

Even setting preservation issues aside, that portion of Article 36.15 has been interpreted as referring only "to advice from the court in connection with the charge"; it does not apply to the prosecution's jury argument. *Roach v. State*, 440 S.W.2d 72, 74 (Tex. Crim. App. 1968). "The Texas Court of Criminal Appeals has held that this statute is not violated by references made by the prosecutor, in his jury argument, to the fact that the jury charge included special charges requested by the defense." *Witt*

4

*v. State*, 745 S.W.2d 472, 475 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (summarizing *Roach*). The State's remarks therefore do not give rise to an Article 36.15 violation.

We overrule Davis's first and second points.

## III. DEADLY WEAPON

Under the facts of this case, was the evidence sufficient to show that the knife Davis wielded during the robbery was a deadly weapon? In his third point, Davis maintains that it was not and, therefore, that his conviction for aggravated robbery using a deadly weapon may not stand.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Id.* at 448–49.

"A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Hernandez v.*

5

*State*, 501 S.W.3d 264, 268 (Tex. App.—Fort Worth 2016, pet. ref'd) (citing Tex. Penal Code Ann. § 29.02(a)(2)). "The offense becomes aggravated robbery if the person 'uses or exhibits a deadly weapon.'" *Id.* (quoting Tex. Penal Code Ann. § 29.03(a)(2)).

The definition of deadly weapon includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017) (quoting Tex. Penal Code Ann. § 1.07(a)(17)). "Serious bodily injury" is defined as bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* at 322–23 (quoting Tex. Penal Code Ann. § 1.07(a)(46)).

Whether a particular knife is a deadly weapon depends upon the evidence in the case. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). We consider any threatening words or actions by the defendant; the defendant's proximity to the victim; the weapon's ability to inflict serious bodily injury or death, including the size, shape, and sharpness of the weapon; the manner in which the defendant used the weapon; testimony by the victim that she feared death or serious bodily injury; and testimony that the object had the potential to cause death or serious bodily injury. *Johnson*, 509 S.W.3d at 323; *Hopper v. State*, 483 S.W.3d 235, 239 (Tex. App.—Fort Worth 2016, pet. ref'd).

Viewed in the light most favorable to the verdict, the evidence establishes as follows. Around 8:30 at night, Davis entered the gas station wearing a ski mask, with

6

the hood of his jacket up. While the wearing of many types of face coverings has become almost normal in 2021,[2] a jury could have nonetheless believed that Davis's wearing of a ski mask implied an intent to commit serious criminal acts, especially when Davis committed the offense in late 2018 (before the COVID-19 pandemic). *See McAfee v. State*, No. 02-16-00028-CR, 2016 WL 4474359, at *4 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication). He extended his arm under his jacket, pointing it at the cashier as if he were holding a firearm—a gesture meant to convey a threat of violence. *See Parker v. State*, 489 S.W.3d 609, 612–13 (Tex. App.—Texarkana 2016, no pet.). Davis circled around the counter and said, "Open the register, bitch." As he neared within a foot or two of the cashier, she grabbed for his arm and grazed her thumb on the knife, which one witness described as "large." Davis then began to brandish the knife openly. The cashier described feeling terrified that he would hurt her. *See Holland v. State*, No. 13-15-00085-CR, 2016 WL 3626094, at *4 (Tex. App.—Corpus Christi–Edinburg June 30, 2016, no pet.) (mem. op., not designated for publication). Davis used the knife to facilitate the robbery and gain the cashier's compliance, holding the knife to her as she opened the register. *See McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000) (op. on reh'g). When Davis turned to rifle through the bills, the cashier scrambled over the counter, and Davis lunged to grab her while still holding the knife

---

[2]*See, e.g.*, *In re E.F.*, No. 02-20-00228-CV, 2020 WL 6601599, at *2 n.7 (Tex. App.—Fort Worth Nov. 12, 2020, no pet.) (mem. op.) ("Father was wearing a face mask due to the COVID-19 pandemic.").

with his other hand, tearing her sweatshirt. *See Pauda v. State*, No. 07-17-00170-CR, 2018 WL 4211862, at \*3 (Tex. App.—Amarillo Sept. 4, 2018, no pet.) (mem. op., not designated for publication) (concluding that a knife was a deadly weapon in part because "appellant was close enough to [the complainant] to lunge and make contact with her to continue his assault"). The cashier ran across the street to get help, and Davis fled after collecting the money.

On appeal, Davis emphasizes a gap in the cashier's testimony: she conceded that she did not see the knife during the offense and that she only knew what it was by the sharp edge that grazed her thumb. It was not until she reviewed the security video in court that she saw the knife clearly. Davis calls this a "glaring omission" that dooms the deadly-weapon finding.

We hold that despite that gap, the evidence is nonetheless sufficient to support the deadly-weapon finding, as is shown by this case's close parallel with *Johnson*, 509 S.W.3d at 324. There, the complainant cashier "testified that she could not describe the length, size, or shape of the blade" that the assailant used to rob a gas station, and the weapon was not entered in evidence. *Id.* But the court of criminal appeals found the other evidence in the case sufficient to support the finding: that the defendant threatened the cashier and brandished a knife, that he did so while standing "no more than a foot or two from" her, and that a video of the robbery was introduced from which "the jury could have inferred some information about the knife," such as its length (a few inches) and its capacity to inflict harm. *Id.*

8

Consistent with *Johnson*, we hold the evidence sufficient to demonstrate that the knife was a deadly weapon in light of Davis's threatening conduct and directives, his proximity to the cashier, his aggressive effort to prevent her from escaping, the knife's "large" size, the video and photographs showing the knife's characteristics, and the cashier's fear of bodily injury or death.  Having found the evidence sufficient to support the only element of the offense that Davis has challenged, we overrule his third point.

## IV.    CONCLUSION

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 1, 2021