Jose **HERNANDEZ**, Appellant

v.

The **STATE** of Texas, State

**NO. 02-15-00395-CR**

Court of Appeals of Texas,
Fort Worth.

DELIVERED: August 31, 2016

John W. Stickels, Stickels & Associates, P.C., Arlington, TX, for Appellant.

Sharen Wilson, Criminal District Attorney; Debra Windsor, Assistant Criminal District Attorney, Chief of Post-Conviction; John E. Meskunas & Tracey Kapsidelis, Assistant Criminal District Attor-

neys Tarrant County District Attorney's Office, Fort Worth, TX, for State.

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

## OPINION

### TERRIE LIVINGSTON, CHIEF JUSTICE

Appellant Jose Hernandez appeals his conviction for aggravated robbery with a deadly weapon.[1] In his sole point, he contends that the evidence is insufficient to support the conviction. Specifically, he argues that the evidence fails to show that he used or exhibited the alleged deadly weapon—a putty knife—and that his acts were voluntary. We affirm.

### Background Facts

In February 2015, Candice Carter's common-law husband, James Hurtado, went into a store while Carter and her infant son remained in the car. Carter sat in the front passenger seat while her son was strapped into the backseat and faced that direction. In a matter of minutes, appellant, who had been walking around the store's parking lot, opened the driver-side door and jumped into the driver's seat. Carter reached toward the ignition for her keys, but appellant pushed her back, reached into a pocket in his pants, and firmly said, "[G]et the [f---] out of the car ... [with] your baby, or I'm going to bust." Carter, believing appellant would shoot her even though she had not seen a gun, got out of the car and opened the passenger-side backdoor to remove her son while screaming for Hurtado.

When Carter fumbled with her son's seatbelt, she saw appellant pointing a shiny, metallic object at her. Out of concern for her and her son's safety, Carter yanked his car seat out and ran into the store. Within seconds, Hurtado ran outside and banged on the driver-side window. Appellant was in the car at this time with the doors locked and windows up. The car's starter was out, so the engine was not on.

Arriving momentarily, police officers spotted the car as well as Hurtado, who was yelling, "[H]e's in my car[.] ... [H]e just robbed my wife." Another man, referring to appellant, was yelling, "I know him. He's not right in the head." The officers approached appellant with guns drawn. Appellant looked at an officer before putting his hands on top of the steering wheel and his head down. When appellant did not respond to the officers' commands to unlock the doors, the officers busted out a window and pulled appellant through it and onto the ground.

Once the officers subdued appellant, they searched the car and found a putty knife underneath the driver-side front seat, where appellant had been sitting. The knife had a wooden handle with a shiny, metal blade and a serrated edge. No other shiny objects or potential weapons were found in the search, and both Carter and Hurtado denied ever owning the knife. Moreover, Hurtado's work at an auto shop did not require use of a putty knife.

A grand jury indicted appellant with committing aggravated robbery by using or exhibiting a deadly weapon, the knife. With the assistance of appointed counsel, appellant pled not guilty. He also pled true to the indictment's allegation that he had a prior felony conviction.

At trial, Carter could not identify what object appellant had pointed at her. She testified, however, that she was terrified because she thought she was going to be

---

1. *See* Tex. Penal Code Ann. § 29.03(a)(2)    (West 2011).

shot or stabbed. The jury heard evidence that the police did not find appellant's fingerprints on the putty knife. Appellant testified that he had not possessed the putty knife and had never touched it.

Appellant's brother, Randy Cook, testified that appellant is diabetic and sometimes allows his blood sugar to "act[ ] up." Cook testified that when appellant loses control of his blood sugar, he cannot comprehend his whereabouts, and he is not completely aware of his actions. Cook said that on the night of the incident described above, he saw his brother and believed that he was going to have a diabetic episode. Cook testified that he had attempted to persuade appellant to go home with him but that appellant had refused.

Appellant testified that he has had diabetes since he was a child. He stated that he had no recollection of the incident that occurred involving Carter and Hurtado but that he remembered feeling bad because of his diabetes immediately before the incident.

In his closing argument, appellant argued in part that his acts were not voluntary because they occurred during his diabetic episode. After the parties concluded their arguments, the jury found appellant guilty of aggravated robbery. Appellant chose the trial court to assess his punishment, and the court sentenced him to twenty years' confinement. He brought this appeal.

### Evidentiary Sufficiency

In his only point, appellant argues that the evidence is insufficient to support his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *Murray v. State*, 457 S.W.3d 446, 448 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 136 S.Ct. 198, 193 L.Ed.2d 127 (2015).

▮ The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App.2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex.Crim.App.2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

▮ The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex.Crim.App. 2014). Circumstantial evidence alone may be sufficient to support a conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim. App.2007); *see Moore v. State*, 531 S.W.2d 140, 142 (Tex.Crim.App.1976).

Appellant's contention concerning the alleged insufficiency of the evidence is two-

fold.[2] He contends that the evidence does not support the finding that he used or exhibited a deadly weapon—the knife—and that the evidence does not establish his acts as voluntary. Appellant does not challenge the jury's implicit finding as to identity (that he was the person who committed the robbery) or the jury's implicit finding that the putty knife qualified as a deadly weapon under the penal code.

■ A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2) (West 2011). The offense becomes aggravated robbery if the person "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2). A person uses or exhibits a deadly weapon under the aggravated robbery statute if he employs the weapon in any manner that facilitates the robbery. *McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim.App.2000).

### Use or exhibition of a deadly weapon

■ Appellant challenges the sufficiency of the evidence to support a finding that he used or exhibited a deadly weapon. His argument on that subject reads as follows:

> The State failed to prove that [appellant] committed the offense of aggravated robbery because there is no evidence to support the jury's finding that he used or exhibited a deadly weapon[—]a knife. . . .
>
> The facts clearly show that the verdict in this case is contrary to the law and the evidence. [Carter] testified that she did not see [appellant] with a knife[—]the only thing that she saw was "something shiny." In addition, [appellant's] fingerprints were not on the

knife. Finally, [appellant] testified the knife in question was not his and that he had never seen it before.

> Based on this record, [appellant's] conviction is clearly wrong and manifestly unjust.

We cannot agree with this contention; instead, viewing the circumstantial evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant used or exhibited the putty knife. The police officers at the scene searched Carter's car shortly after appellant had been pulled out of it and found the putty knife under the seat he had been sitting in. Carter testified that she had seen a shiny metallic item in appellant's hand after he had reached into his pocket, and the evidence at trial shows that the putty knife had a shiny blade. Carter testified that the knife did not belong to her or to Hurtado. The officers did not locate any other shiny metallic objects in the car. We conclude that this circumstantial evidence is sufficient to link the putty knife to appellant. *See Hooper*, 214 S.W.3d at 13; *Moore*, 531 S.W.2d at 141–42 (holding that circumstantial evidence was sufficient to prove that a pistol was used in an aggravated robbery even though the victim never saw the pistol); *Webber v. State*, 757 S.W.2d 51, 54 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd) (holding that although the victim never saw a deadly weapon, "the State properly relied on circumstantial evidence to show [use of] a deadly weapon during the robbery"). We must defer to the jury's resolution of conflicting inferences that could have been drawn from the facts that Carter did not particularly see appellant holding the knife and that the knife did not contain appellant's fingerprints. *See Murray*, 457

---

2. We address the dissenting opinion's con-     trary contention below.

S.W.3d at 448–49; *see also Mejia v. State*, No. 05-09-00178-CR, 2010 WL 3212063, at *3 (Tex.App.–Dallas Aug. 16, 2010, pet. ref'd) (not designated for publication) (stating that the "absence of fingerprint evidence is not dispositive" and citing cases supporting that proposition).

Viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that appellant used or exhibited the putty knife during the robbery. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Thus, we conclude that the evidence is sufficient in that regard and overrule the first part of appellant's only point.

**Voluntariness of appellant's acts**

■ Appellant also challenges the sufficiency of the evidence to prove that he acted voluntarily. The entirety of his contention states, "[T]here is little or no evidence to support the jury's finding that [a]ppellant's actions were a 'voluntary act.'"

■ A person commits an offense only if he voluntarily engages in conduct. Tex. Penal Code Ann. § 6.01(a) (West 2011); *see also Mendenhall v. State*, 77 S.W.3d 815, 818 (Tex.Crim.App.2002) (explaining that a person who is unconscious or semi-conscious at the time of the alleged offense may argue that there was no voluntary act). Voluntariness refers to "one's own physical body movements. If those physical movements are ... caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis[,] or other nonvolitional impetus, that movement is not voluntary." *Rogers v. State*, 105 S.W.3d 630, 638 (Tex.Crim.App.2003) (footnote omitted). We review the issue of voluntariness under the *Jackson* standard

discussed above. *See Whatley v. State*, 445 S.W.3d 159, 165–67 (Tex.Crim.App.2014).

Viewing all of the evidence in the light most favorable to the verdict, we conclude that the evidence and inferences presented at trial were sufficient to allow a rational factfinder to find beyond a reasonable doubt that appellant's actions were voluntary. *See id.* Carter testified that with a "scary" and firm tone, appellant told her to "get the [f---] out" of the car or he was "going to bust." She explained that he then pointed something shiny and metallic at her before she took her son out of the car and ran inside the store. She testified that appellant attempted to start the car but that "it wouldn't [turn] over." A surveillance camera on the outside of the store recorded appellant pulling on door handles of other cars before entering Carter's car. When appellant first saw the police arrive, he put his hands on the top of the steering wheel and put his head down. When the officers dragged him out of Carter's car, he moved his arm toward the ground to brace himself from the fall.

In contrast to these acts and words that indicate appellant's conscious yet thwarted purpose to steal a car, his brother, Cook, testified that when appellant has diabetic episodes, he is not able to speak clearly but instead "slur[s] a little bit." Cook also testified that when the episodes are occurring, appellant is unable to walk, hold objects, or otherwise function physically. Similarly, appellant testified that when he is having a diabetic episode, he feels drowsy and feels like he cannot walk.

Moreover, after officers pulled appellant out of the car, he had the appearance of being unconscious, but he reacted to a "sternum rub" given by medical personnel, which led one police officer to believe that appellant was "playing possum."[3] That offi-

---

**3.** A sternum rub involves pushing firmly against an individual's sternum with knuck-

cer testified that when appellant heard that medical personnel could give him a catheter if he did not show more signs of consciousness, he "looked up ... and then went back to unconscious[ness]." Another officer testified that appellant appeared to be mostly motionless after being dragged out of the car but that when he received the sternum rub, he "kind of lunged forwards a little bit and opened his eyes and took a ... deep breath." That officer testified that an unconscious person would not have responded to a sternum rub.

Appellant testified that he did not remember anything about the incident in question but nonetheless testified that he was certain that he did not have the putty knife in his possession at that time. His testimony was also inconsistent in other respects. For example, at one point, he testified that on the night in question, he remembered leaving a friend's house to go to Walmart but that he did not know what occurred after leaving. Later, however, appellant testified that he remembered looking for his friend at Walmart, not being able to find him, and "[taking] off walking" away from that store. Also, at one point, appellant testified that he had last tested his blood sugar on January 1, 2015, but he later testified that he had last tested it on February 4, 2015. The jury could have considered these inconsistencies in appellant's testimony when determining the credibility of his claims that he did not remember the events on the night in question and that he had not acted consciously or voluntarily.

Finally, a paramedic testified that appellant was not unconscious at the scene of the robbery. The paramedic testified that while appellant's glucose level was higher than normal, it was not high enough to be classified as treatable hyperglycemia. The paramedic explained that a person with

appellant's glucose level would not display an altered state.

Although another jury might have relied on some inferences from the evidence to find that appellant was not acting voluntarily, viewing all of the evidence in the light most favorable to the verdict, we cannot conclude that this jury acted irrationally by implicitly finding beyond a reasonable doubt that he acted voluntarily. *See id.*; *Murray*, 457 S.W.3d at 448–49. Thus, we conclude that the evidence is sufficient to show that appellant acted voluntarily. We overrule the remainder of appellant's only point.

### The dissenting opinion's argument

The dissenting opinion contends that appellant raised the issue of whether the knife qualified as a deadly weapon under the penal code and asserts that we should examine that issue by such factors as

(1) the size, shape, and sharpness of the knife; (2) the manner of its use or intended use; (3) any evidence of the knife's life-threatening capabilities; (4) the nature or existence of any inflicted wounds; (5) threats or gestures used by the defendant; and (6) the physical proximity between the victim and the knife.

Dissenting Op. at 271, 272. At no point in appellant's argument does he discuss or analyze these factors or comparable factors. He never discusses any characteristic of the knife at issue beyond mentioning one time in his brief that it was a "silver spackle knife." He does not cite, much less present argument on, the section of the penal code that defines what a deadly weapon consists of. *See* Tex. Penal Code Ann. § 1.07(a)(17) (West Supp. 2016).

Instead, after setting forth the standard, well-settled principles that apply to all evidentiary sufficiency challenges, and after

les; it causes a painful sensation which will yield a response if the individual is conscious.

setting forth (without argument) the law concerning aggravated robbery, he confines his particular two sufficiency challenges to whether the State adequately linked the knife to him (as to prove his use or exhibition of it) and whether his acts were voluntary:

> The State failed to prove that [appellant] committed the offense of aggravated robbery because there is no evidence to *support the jury's finding that he used or exhibited a deadly weapon*[—]a knife. In addition, *there is little or no evidence to support the jury's finding that [a]ppellant's actions were a "voluntary act."* Thus, there is insufficient evidence to sustain [his] conviction and this requires reversal . . . .

> The facts clearly show that the verdict in this case is contrary to the law and the evidence. [Carter] testified that she did not see [appellant] with a knife [and that] the only thing that she saw was "something shiny." In addition, [appellant's] fingerprints were not on the knife. Finally, [appellant] testified the knife in question was not his and that he had never seen it before.

> *Based on this record,* [appellant's] conviction is [erroneous]. [Emphases added.]

Moreover, the State did not understand appellant to argue that the knife, by the factors discussed above, did not qualify as a deadly weapon. Rather, the State presented the following summary of appellant's argument:

> Appellant challenges the sufficiency of evidence proving he used or exhibited a deadly weapon and invites this Court to reverse the trial court's judgment *because the victim never clearly saw what was in [a]ppellant's hand, the putty knife did not have [a]ppellant's fingerprints on it, and [a]ppellant denied that the putty knife was his. . . . In other*

> *words, [a]ppellant claims that a lack of direct evidence rendered the State's case legally insufficient to support the trial court's judgment.* [Emphasis added.]

The remainder of the State's brief focuses on whether circumstantial evidence adequately linked appellant to the knife found in Carter's car, not whether that knife met the definition of a deadly weapon under the penal code's definition and under the factors discussed above.

Even with a liberal construction of the parties' briefs, we believe we are not compelled to decide this case on a theory appellant did not discuss or argue and to which the State did not respond.

## Conclusion

Having overruled appellant's sole point, we affirm the judgment of the trial court.

WALKER, J., filed a dissenting opinion.

### SUE WALKER, JUSTICE, dissenting

#### I. INTRODUCTION

The majority states that Appellant Jose Hernandez "does not challenge . . . the jury's implicit finding that the putty knife qualified as a deadly weapon under the penal code." Because I believe that Hernandez raised this issue—particularly when considering our duty to liberally construe his brief—and because the majority does not address it, I respectfully dissent.

### II. DID HERNANDEZ RAISE THE DEADLY-WEAPON ISSUE?

#### A. Hernandez's Brief

Hernandez raised the following sole point of error in his brief: "Was the evidence at trial sufficient to sustain the conviction for aggravated robbery?" In the argument section of his brief, Hernandez noted that the State is required to prove each element of an offense beyond a rea-

sonable doubt, and he argued that "there is insufficient evidence for the jury to have found beyond a reasonable doubt that [he] committed the offense of aggravated robbery." Hernandez specifically complained that "[t]he State failed to prove that [he] committed the offense of aggravated robbery because there is no evidence to support the jury's finding that he used or exhibited a deadly weapon—a knife."

The State treated Hernandez's brief as if it had raised the deadly-weapon issue. The State framed Hernandez's appeal as a challenge to "the sufficiency of evidence proving he used or exhibited a deadly weapon." Noting that "[a]n item is a deadly weapon if the manner of its use or intended use is capable of causing death or serious bodily injury," the State argued that the subject putty knife was "capable of causing serious bodily injury." Thus, according to the State, "the evidence legally sufficed to prove [Hernandez] used or exhibited a deadly weapon during the robbery."

Despite both Hernandez and the State making arguments as to whether Hernandez used or exhibited a deadly weapon, the majority does not address whether the subject putty knife was in fact a deadly weapon. Instead, the majority declares that Hernandez did not challenge whether the putty knife was a deadly weapon, and as such, the majority simply concludes that "a rational jury could have found beyond a reasonable doubt that appellant used or exhibited *the putty knife*" (i.e., not "the deadly weapon"). [Emphasis added.]

## B. Sufficiency of the Evidence in Aggravated Robbery Cases

In reviewing whether the evidence is sufficient to support a conviction, we are to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). One of the essential elements of the offense of aggravated robbery—the offense at issue here—is whether the defendant used or exhibited a deadly weapon in the course of committing a robbery. *See Williams v. State*, 240 S.W.3d 293, 298 (Tex. App.–Austin 2007, pet. ref'd) (holding that the use or exhibition of a deadly weapon is an essential element of aggravated robbery); *Brown v. State*, 212 S.W.3d 851, 859 (Tex. App.–Houston [1st Dist.] 2006, pet ref'd) (op. on reh'g) (same), *cert. denied*, 552 U.S. 1151, 128 S.Ct. 1088, 169 L.Ed.2d 825 (2008).

Knives—like the putty knife at issue here—are not deadly weapons per se. *Clark v. State*, 444 S.W.3d 671, 678 (Tex. App.–Houston [14th Dist.] 2014, pet. ref'd); *Stewart v. State*, 198 S.W.3d 60, 63 (Tex. App.–Fort Worth 2006, no pet.). An item is a deadly weapon if the "manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2016). To determine whether a knife is a deadly weapon, we may consider: (1) the size, shape, and sharpness of the knife; (2) the manner of its use or intended use; (3) any evidence of the knife's life-threatening capabilities; (4) the nature or existence of any inflicted wounds; (5) threats or gestures used by the defendant; and (6) the physical proximity between the victim and the knife. *Martinez v. State*, No. 02–11–00100–CR, 2012 WL 1059465, at *3 (Tex. App.–Fort Worth Mar. 29, 2012, no pet.) (mem. op., not designated for publication) (citing *Victor v. State*, 874 S.W.2d 748, 751–52 (Tex.App.–Houston [1st Dist.] 1994, pet. ref'd)).

## C. Our Duty to Liberally Construe a Brief

We are to construe briefs liberally. *See* Tex. R. App. P. 38.9; *Goyzueta v. State*,

266 S.W.3d 126, 133 (Tex.App.–Fort Worth 2008, no pet.). We do this to avoid waiver and to obtain a just, fair, and equitable adjudication of litigants' rights. *Rivera v. State*, 130 S.W.3d 454, 459 (Tex.App.–Corpus Christi 2004, no pet.); *Marroquin v. State*, 112 S.W.3d 295, 303 (Tex.App.–El Paso 2003, no pet.). We are to address every subsidiary question that is fairly included within a particular point or issue. *Ramsey v. State*, 249 S.W.3d 568, 577 n. 5 (Tex.App.–Waco 2008, no pet.); *see* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."). If we are able to ascertain the nature of the complaint from the argument, the issue will be preserved for appellate review. *Sanchez v. State*, 98 S.W.3d 349, 355 (Tex.App.–Houston [1st Dist.] 2003, pet. ref'd).

### D. Hernandez Raised the Deadly-Weapon Issue

Hernandez's sole point of error is that the evidence was insufficient to support his conviction for aggravated robbery. As an essential element of that offense is whether Hernandez used or exhibited a deadly weapon in the course of committing the robbery, the majority should have addressed whether the subject putty knife was a deadly weapon. *See Williams*, 240 S.W.3d at 298; *Brown*, 212 S.W.3d at 859; *see also Ramsey*, 249 S.W.3d at 577 n. 5 (we are to address "every subsidiary question that is fairly included" within a particular point or issue). Nothing about how Hernandez framed his issue would indicate that he was limiting his argument to only some of the elements of the offense. Hernandez specifically argued that "there is no evidence to support the jury's finding that he used or exhibited a deadly weapon," and the State addressed whether the putty knife was a deadly weapon when it stated that the subject putty knife was "capable of causing serious bodily injury."

Thus, I believe—particularly when construing Hernandez's brief liberally in his favor—that Hernandez raised the issue of whether the subject putty knife constituted a deadly weapon. *See* Tex. R. App. P. 38.9; *Goyzueta*, 266 S.W.3d at 133.

### III. Conclusion

For the reasons set forth above, I believe the majority should have addressed whether the putty knife at issue constituted a deadly weapon. Because the majority did not, I dissent.