

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00442-CR
No. 02-24-00443-CR

———————————————

ABNER JOSUE CASTILLO-VILLAMIN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court Nos. CR23-00233, CR24-00135

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Abner Josue Castillo-Villamin ("Castillo") appeals his convictions for aggravated kidnapping and aggravated robbery. *See* Tex. Penal Code Ann. §§ 20.04, 29.03. In two points, he challenges the sufficiency of the evidence supporting the jury's findings (A) that he did not release his victim in a safe place and (B) that he used or exhibited a deadly weapon during the robbery. *See id.* §§ 20.04, 29.03. Because sufficient evidence supports the jury's verdict, we will affirm.

## II. BACKGROUND

### A. Abduction

On June 20, 2023, Castillo went to Josepth Alberto Sanchez-Coello's ("Sanchez") home and told him they had to steal a car. Castillo and Sanchez waited in a parking lot in Dallas where they confronted Corrini Appelgryn, the victim, as she was leaving work. Appelgryn felt Castillo, who was behind her, press a knife into her back and felt it scratch her. Appelgryn felt the knife but did not see it; Sanchez saw the knife. Castillo took Appelgryn's keys from her and threw them to Sanchez. Sanchez got into the driver's seat of Appelgryn's car, and Castillo forced Appelgryn into the back seat, then climbed in with her.

Sanchez drove while Castillo sat in the back with Appelgryn. Castillo made Appelgryn lay her head on his lap, petted her, and said, "[S]hut up, baby, it's okay, baby." The men otherwise spoke only Spanish, which Appelgryn could not understand.

Castillo put a blanket over Appelgryn's head and compelled her to enter a passcode to unlock her phone so he could use it to play music in the car.

After driving for about one-and-one-half hours, the men stopped the car on a gravel access road near a bridge that crossed the Red River.[1] Castillo indicated that Appelgryn should write her phone's passcode on a sheet of paper; she complied. The men got out, led her out and away from the vehicle, and then pushed her down onto her knees. Both Appelgryn and Sanchez feared that Castillo would execute Appelgryn. The men stood behind her for about a minute and then walked back to the car, got in, and drove away.

They left Appelgryn in the dark, without her phone, on a gravel roadway near a highway at the Texas–Oklahoma border. Appelgryn climbed over the barrier beside the highway and waved her arms for fifteen to twenty minutes before a passing car stopped. Appelgryn got into the car. The driver called 911 and then drove her to a nearby rest stop where she could use the toilet and wait for deputies from the Cooke County Sheriff's Office. Appelgryn also called her father using the driver's phone.

## B.    Castillo's Apprehension

Because Castillo and Sanchez still had her phone, Appelgryn's father—still on the phone call with Appelgryn—was able to track them in her car using the phone's

---

[1]The gravel road was described as either an access road or a pathway leading to an electrical box under the bridge.

GPS. Appelgryn relayed the location information from her father to the deputies. Her father sent the deputies a map showing the car's path of travel from Dallas to the Oklahoma–Texas border where they had left Appelgryn and then west to Nocona, Texas.

Cooke County Sheriff's staff contacted the police in Nocona. Nocona police officers stopped Castillo and Sanchez—driving Appelgryn's car—and arrested them. Cooke County Sheriff's deputies retrieved the car and took custody of Castillo and Sanchez. A subsequent search of their persons and the vehicle produced no knife.[2] They then released the car to Appelgryn.

A grand jury indicted Castillo for aggravated robbery and aggravated kidnapping. *See id.* §§ 20.04, 29.03. In the indictment for aggravated robbery, the State alleged that Castillo, in the course of committing theft of property, intentionally and knowingly threatened or placed Appelgryn in fear of imminent bodily injury or death while using or exhibiting a deadly weapon, namely a knife. *See id.* §§ 29.02(a)(2), 29.03(a)(2). The indictment for aggravated kidnapping alleged that Castillo intentionally and knowingly abducted Appelgryn with the intent to facilitate the commission of felony unauthorized use of a vehicle or to facilitate the flight after the attempt or commission of the offense. *See id.* § 20.04(a)(3).

---

[2]A Cooke County investigator and Nocona police officers searched the vehicle and found, among other items, Appelgryn's purse, a mug with her name printed on it, her phone, and the paper on which she had written the phone's passcode.

4

## C.     Later-Found Knife

About a year after the abduction and about a week before the jury trial began, Appelgryn's sister found a roll of cloth under the front passenger seat of the car and turned it over to the police.[3]  That night, Appelgryn and her sister further searched in the car, and her sister saw a knife partially under the floorboard carpet, wedged between the console and the front passenger seat.  They did not remove the knife; they contacted Cooke County officials, who retrieved it from the vehicle.

## D.     Trial

At the jury trial, Appelgryn, her father, her sister, four Nocona police officers, the lieutenant who retrieved the knife from Appelgryn and her sister, a Cooke County investigator, and Sanchez testified.  The jury returned a verdict of guilty as to both offenses.

Neither Castillo nor the State introduced additional evidence during the punishment phase of the trial, which was also tried to a jury.  The jury found that Castillo did not voluntarily release Appelgryn in a safe place.  The jury assessed Castillo's punishment at thirty years' incarceration for the aggravated kidnapping and fifteen

---

[3]The day before, Appelgryn and her sister had found an article of Castillo's clothing, a neck gaiter, in the vehicle.  A Cooke County Sheriff's Lieutenant took possession of the gaiter.  The lieutenant who took possession of the clothing did not further search the car at that time.  During his testimony at Castillo's trial, Sanchez identified the clothing as having been worn by Castillo while the men abducted Appelgryn.

years' incarceration for the aggravated robbery. The trial court sentenced him accordingly.

Castillo timely filed this appeal.

### III. DISCUSSION

Castillo argues two points: (A) that insufficient evidence supports the jury's finding that he did not release Appelgryn in a safe place and (B) that insufficient evidence supports the jury's finding that he used a deadly weapon while committing robbery.

## A. Release in a Safe Place

At the punishment stage of the trial, Castillo raised the mitigating affirmative defense to aggravated kidnapping that he had released Appelgryn in a safe place. *See id.* § 20.04(d). Castillo argues that the jury's rejection of this defense was not supported by legally and factually sufficient evidence.

### 1. Standard of Review

The defendant has the burden of proving an affirmative defense by a preponderance of the evidence. *Id.* § 2.04(d). We may review a factfinder's rejection of a defendant's affirmative defense for legal and factual sufficiency. *Petetan v. State*, 622 S.W.3d 321, 337 (Tex. Crim. App. 2021); *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015).

In evaluating the legal sufficiency of the evidence to support a factfinder's rejection of an affirmative defense, we first examine the record for more than a scintilla

6

of evidence supporting the jury's implicit rejection of that defense, disregarding all evidence to the contrary unless a reasonable factfinder could not. *Petetan*, 622 S.W.3d at 337; *Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013). If there is no evidence to support the implicit finding, we must examine the entire record to see if the appellant proved the affirmative defense as a matter of law. *Matlock*, 392 S.W.3d at 669–70. If the record reveals evidence supporting the appellant's affirmative defense but that supporting evidence was "subject to a credibility assessment and was evidence that a reasonable jury was entitled to disbelieve, we will not consider that evidence in our matter-of-law assessment." *Id.* at 670. In other words, we may reverse a factfinder's rejection of an appellant's affirmative defense on legal-sufficiency grounds, and therefore reverse the sentence, only if the evidence conclusively proves the appellant's affirmative defense and no reasonable factfinder was free to think otherwise. *Petetan*, 622 S.W.3d at 337.

In assessing the factual sufficiency of the evidence to support a factfinder's rejection of an affirmative defense, we must consider all the evidence relevant to that defense in a neutral light and determine whether the verdict is so against the great weight and preponderance of the evidence that it is manifestly unjust, conscience-shocking, or clearly biased. *Petetan*, 622 S.W.3d at 357; *Matlock*, 392 S.W.3d at 670–71. In our review, we may not usurp the factfinder's function by substituting our judgment in the place of its verdict. *Petetan*, 622 S.W.3d at 357; *see Matlock*, 392 S.W.3d at 671. We may sustain this point, and remand the case for a new trial, only if after detailing the relevant

evidence and stating how the contrary evidence greatly outweighs the evidence supporting the verdict, we also clearly state why the verdict is so against the great weight of the evidence that it is manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias. *Petetan*, 622 S.W.3d at 357; *Butcher*, 454 S.W.3d at 20.

### 2. Applicable Law

To examine the record to determine whether Castillo proved the affirmative defense that he voluntarily released Appelgryn in a safe place as defined in Section 20.04(d), we must first consider the meaning of the phrase "a safe place." *See* Tex. Penal Code Ann. § 20.04(d); *Butcher*, 454 S.W.3d at 16; *see also Floyd v. State* 620 S.W.3d 154, 158 (Tex. Crim. App. 2021) (explaining that sometimes a sufficiency issue turns on a statutory definition's meaning). When construing a statute, we must first look to its literal language to ascertain its meaning. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). If the language of the statute is plain, then we interpret the statute according to that plain language. *Butcher*, 454 S.W.3d at 15–16. However, if the language of the statute is ambiguous or the plain meaning would lead to absurd results, then we examine extratextual sources to discern the meaning of the statute. *See Brown v. State*, 98 S.W.3d 180, 183 (Tex. Crim. App. 2003). We employ these rules of statutory construction to fulfill this court's constitutional duty to construe the meaning of a particular statute in the way intended by the legislators who enacted the law. *See id.*; *Boykin*, 818 S.W.2d at 785–86.

8

The term "safe place" as used in the statute is ambiguous because it is not defined and the term is susceptible to different meanings based on the facts of each case. *See Butcher*, 454 S.W.3d at 16–17. To determine whether a victim in a given case was released in a "safe place," we may consider seven nonexclusive factors, including (1) the remoteness of the location, (2) the proximity of help, (3) the time of day, (4) the climate, (5) the condition of the complainant, (6) the character of the location and surrounding neighborhood, and (7) the complainant's familiarity with the location or neighborhood. *See id.* at 19–20.

### 3.    Application

Castillo released Appelgryn (1) on a gravel path off a well-traveled highway, a somewhat remote location but (2) not far from possible help in the form of drivers on the highway; (3) at night; (4) in a climate that presented no special threat to Appelgryn; (5) who was very distressed but physically unharmed; (6) in an unpopulated area with no nearby businesses; (7) and she was familiar with the area only in passing. Considering these seven factors, disregarding all evidence to the contrary unless a reasonable factfinder could not, we hold that more than a scintilla of evidence supports the jury's finding that Castillo did not release Appelgryn in a safe place. *See West v. State*, 406 S.W.3d 748, 766–67 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (holding that victim released in emotional distress on deserted beach near roadway at night was not released in a "safe place"); *Yates v. State*, No. 06-12-00004-CR, 2012 WL 2928536, at *2 (Tex. App.—Texarkana July 18, 2012, pet. ref'd) (mem. op., not designated for

9

publication) (holding same when victim was released near residential roadway in great distress); *Nolan v. State*, 102 S.W.3d 231, 238 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding same when victim was released at unfamiliar middle school after school hours). Accordingly, the evidence was legally sufficient to support the jury's rejection of Castillo's affirmative defense.

As to factual sufficiency, Castillo argues that because Appelgryn was not a child and not all seven factors weigh strongly against the affirmative defense, the finding was so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, and clearly biased. We disagree. A victim—whether an adult or a child—in great emotional distress and in an unfamiliar, remote, and unpopulated area, is not necessarily safe. *See Woods v. State*, 301 S.W.3d 327, 332 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that jury's finding that adult victim who was released in distress in an unfamiliar, unpopulated area was not released in a "safe place" was not manifestly unjust); *Harrell v. State*, 65 S.W.3d 768, 773 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding same). Considering the entire record in a neutral light, including the factors above and the age of the victim, we hold that the evidence against the verdict was not so much against the great weight and preponderance of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *See Matlock*, 392 S.W.3d at 670. We overrule Castillo's first point.

10

**B.      Use or Exhibition of a Deadly Weapon**

In his second point, Castillo challenges the evidentiary sufficiency supporting the jury's finding that he used a deadly weapon while robbing Appelgryn, an element of the offense of aggravated robbery.  *See* Tex. Penal Code Ann. § 29.03(a)(2).

**1.      Standard of Review**

In our evidentiary-sufficiency review of the elements of an offense, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).  This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility.  *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's.  *Queeman*, 520 S.W.3d at 622.  Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict.  *Braughton v. State*, 569 S.W.3d 392, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex.

11

Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

## 2. Applicable Law

A person commits the offense of aggravated robbery if the person commits the offense of robbery[4] and uses or exhibits a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2). "Deadly weapon" is defined in the Texas Penal Code as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17).

An object that has an obvious purpose apart from causing death or serious bodily injury is typically not a deadly weapon under Subsection 1.07(a)(17)(A) because it is not manifestly designed, made, or adapted for that purpose. *McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000). Texas courts have held that kitchen knives, utility knives, straight razors, and eating utensils are manifestly designed for other purposes and, consequently, do not qualify as deadly weapons under subsection (A). *Id.* A knife, the weapon alleged in the indictment, falls into the same category due to its obvious purpose apart from inflicting death or serious bodily injury. *See id.* at 502–03.

However, a deadly weapon can also be "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B). This provision does not require that the actor caused death or

---

[4]A person commits the offense of robbery if, in the course of committing theft, he intentionally, knowingly, or recklessly causes bodily injury to another or threatens or places another in fear of bodily injury or death. Tex. Penal Code Ann. § 29.02.

serious bodily injury, nor even that he actually intended to do so. *McCain*, 22 S.W.3d at 503. Indeed, while a victim's injuries are factors in determining whether an object qualifies as a deadly weapon, *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004), the State is not required to show that an object actually caused serious bodily injury to prove that it was used as a deadly weapon. *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017).

### 3. Application

The indictment alleged that in the course of committing theft of property, Castillo intentionally and knowingly threatened or placed Appelgryn in fear of imminent bodily injury or death by using or exhibiting a deadly weapon, namely a knife. *See id.* §§ 29.02(a)(2), 29.03(a)(2).[5]

---

[5]Castillo does not challenge whether the jury could consider the presence of a knife, only whether his use of the knife fell under the Texas Penal Code's definition of a deadly weapon. *See* Tex. Penal Code Ann. § 1.07(a)(17).

Although Castillo also does not allege error in the jury charge, a hypothetically correct jury charge may have included an accomplice-witness instruction because the record suggests that Sanchez was also indicted for and convicted of an offense—the specific offense is not specified in the record—arising out of the events of this case, so he may have been an accomplice witness. *See* Tex. Code Crim. Proc. Ann. art. 38.14 ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed[,] and the corroboration is not sufficient if it merely shows the commission of the offense."); *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) (defining an accomplice witness). Although Castillo did not preserve the issue for appeal by requesting an accomplice-witness instruction or objecting to the trial court's failure to include one, unpreserved charge error may warrant reversal if it results in egregious harm. *See Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). The trial court's failure to charge the jury on the need for corroboration of a codefendant-accomplice's testimony can

Sanchez testified that Castillo had used a knife, and at trial, he identified the knife that Appelgryn and her sister found in the car as the one Castillo had used.[6] Appelgryn testified that after Castillo took her keys, she tried to back away from the car, but Castillo had "stuck something very sharp in [her] back" that she believed to have been a knife. His pressing the knife into her back had left scratch marks. Castillo then pushed her into the back seat of the car.

In deciding whether the knife used in this kidnapping was *capable*—the standard required under Section 1.07(a)(17)(B)—of causing death or serious bodily injury, the Court of Criminal Appeals has said:

> [W]e consider words and other threatening actions by the defendant, including the defendant's proximity to the victim; the weapon's ability to inflict serious bodily injury or death, including the size, shape, and sharpness of the weapon; and the manner in which the defendant used

---

result in egregious harm when there is little corroboration in the record. *See Saunders v. State*, 817 S.W.2d 688, 692–93 (Tex. Crim. App. 1991). But the trial court's omission of an accomplice-witness instruction is generally harmless unless the corroborating evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (quoting *Saunders*, 817 S.W.2d at 692). In this case, even were we to presume the trial court's omission of the instruction was error, it was harmless because the corroborating evidence—e.g., Appelgryn's testimony—would have been sufficient to support the conviction. *See Jackson v. State*, 487 S.W.3d 648, 659 (Tex. App.—Texarkana 2016, pet. ref'd) (holding that failure to include accomplice-witness instruction was harmless when supported by victim testimony).

[6]The State showed Sanchez the knife during his testimony, and he confirmed that it was the same knife Castillo had used. The State did not offer the knife into evidence at that time. When the State offered the knife into evidence later, Castillo objected, and the trial court excluded it on the basis of the length of time and lapse in custody before the knife was recovered.

the weapon. . . . These, however, are just factors to guide a court's sufficiency analysis; they are not inexorable commands.

*Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim App. 2017).

Moreover, in determining whether a knife is a deadly weapon under the facts of a given case, the Court of Criminal Appeals has said that "a factfinder should consider its *intended* use from the attitude indicated by the perpetrator." *Glover v. State*, 710 S.W.3d 816, 821 (Tex. Crim. App. 2025) (quoting *Tisdale v. State*, 686 S.W.2d 110, 117 (Tex. Crim. App. 1985) (Clinton, J., concurring on reh'g)). As the court explained:

> When a suspect acts in a way that shows his purpose is to convey to his victim that he will thwart resistance to a taking by using the knife to harm the person of the victim, he *intends* for the victim to believe that the knife is capable of producing serious bodily injury or death to obtain the [objective], and the factfinder is warranted in concluding that the knife is capable of causing death or bodily injury.

*Id.*.

In this case, Castillo used the knife to facilitate the theft of Appelgryn's car and pressed it into her back hard enough to leave scratch marks. The jury could have rationally concluded that Castillo's standing close behind Appelgryn, the knife's being sharp enough to scratch her, and Castillo's using the knife to get Appelgryn into the car after she gave him her keys communicated his intent to persuade her that, if she resisted the theft of her car or tried to escape, he would use the knife to cause serious bodily injury, if not death. *See id.* at 820–21 (holding that a pocket knife used to cut a nylon strap during a robbery was a deadly weapon under the statutory definition because of the implied threat of harm inherent in its display, even though the knife was not used

16

to cause or overtly threaten bodily harm); *McCain*, 22 S.W.3d at 503 (holding that brandishing a butcher knife can meet the definition of a deadly weapon when used in a dangerous situation because of the inherent threat). This is true even though Appelgryn did not see the knife and it was not admitted into evidence; the threat was communicated to her by physical contact. *See Gomez v. State*, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985) (holding that complainant's description alone was legally sufficient to prove use of firearm without recovery of weapon); *Hernandez v. State*, 501 S.W.3d 264, 268 (Tex. App.—Fort Worth 2016, pet. ref'd) (holding that circumstantial evidence may support a deadly weapon finding when victim did not see knife that was used). Under the circumstances of this case, the presence of the knife during the robbery, after Castillo demonstrated to Appelgryn that it was present, was sufficient for a factfinder to conclude that the knife's intended use was that it be capable of causing death or serious bodily injury. *See McCain*, 22 S.W.3d at 503.

Accordingly, we overrule Castillo's second point.

### IV. CONCLUSION

Having overruled both of Castillo's points, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 19, 2026